BODFISH (EASTMAN v.). See Case No. 4,-255.

BODILIAN v. SEATON. See Case No. 1,218.

---

## Case No. 1,595.

### BODIN et al. v. The THULE.

### [3 Woods, 670.][1]

Circuit Court, N. D. Florida. March Term, 1879.

TORTS—VIS MAJOR—NEGLIGENCE—COLLISION.

It is no defense to a libel to recover damages resulting from a collision to say that it was caused by the vis major, namely, a hurricane, if the collision could have been avoided by foresight, precaution and nautical skill.

[Cited in The Chickasaw, 38 Fed. 363.]

[Appeal from the district court of the United States for the northern district of Florida.

[In admiralty. Libel by I. Bodin and others, owners of the bark Marie, against the bark Thule, for collision. The district court rendered a decree for libelants, and, on respondent's appeal, that decree was affirmed.]

E. A. Perry, for libelant, cited: The Louisiana, 3 Wall. [70 U. S.] 164; The Merrimac, 14 Wall. [81 U. S.] 199.

R. L. Campbell and G. A. Stanley, for claimants, cited: The Morning Light, 2 Wall. [69 U. S.] 550; The Great Republic, 23 Wall. [90 U. S.] 20; Owners of the James Gray v. Owners of the John Fraser, 21 How. [62 U. S.] 184.

WOODS, Circuit Judge. The libel claims a decree for the damages sustained by the bark Marie, of which the libelants were owners, in consequence of a collision be-

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

tween her and the bark Thule, which happened about three o'clock on the morning of January 24, 1875. The facts were these: On January 19 preceding, the Thule had been moored alongside and near the end of the railroad wharf, in the bay of Pensacola, with her bow pointing to the shore, and the Marie had been moored to the same side of the wharf, bow towards land and her stern distant only about six feet from the bobstays of the Thule. About three o'clock a. m., January 24, a violent squall suddenly came on, as the result of which both barks were forced from their moorings and driven ashore, and considerable damage sustained by the Marie. The claim of the libel is that the Thule was moored in a careless, negligent and insecure manner; that in consequence thereof she parted her moorings and drifted against the Marie, and caused her to break her mooring chains and drift from the wharf and to go ashore; and that the Marie suffered damage by the collision with the Thule, by being driven on shore, and by the delay caused by the said collision.

The answer denies that the Thule was negligently or insecurely moored, denies that the Thule collided with the Marie, whereby the latter was forced from her moorings, and avers that both barks were driven from their respective berths by the squall, and that the Marie was driven from her moorings and out of her berth, and had grounded before she was struck by the Thule. The answer further claims, that if any damage was sustained by the Marie, it was in consequence of inevitable accident and the vis major, against which human prudence and foresight could not provide, and, therefore, the Thule should not be compelled to respond in damages to the owners of the Marie.

The evidence in the case satisfies me that the Thule broke loose from her moorings and collided with the Marie before the Marie parted her mooring chains, and that the collision was the cause of her being driven from her berth. While there is some conflict of evidence on this point, the decided preponderance is in favor of the view just stated. The witness Robert Christy, who was sleeping in a small house on the wharf, came out of the house for fear the storm would blow it over, and standing, as he states, within fifteen feet from the bow of the Thule and the stern of the Marie, saw the relative positions of the two barks. The bow of the Thule was ten feet from the stern of the Marie at that time. He saw the Thule break her moorings, the Marie remaining hard and fast, and in about two minutes the Thule came down and struck the Marie in the stern, and caused her to carry away her moorings. The Marie, he repeats, was fast and secured by her moorings when the Thule struck her. This witness is corroborated by Boyson, who was on watch on the deck of the Marie before and during the squall. Zachariahson, the master of the Marie, who

was on board when the squall came on, testifies that he felt the shock of a collision with the stern of his ship. There were marks of the collision on the stern of the Thule, which, according to the evidence, could not have been caused except by the bow of the Thule, which was the only vessel adrift. Moreover, the witnesses are of opinion that the Marie was so securely moored that the force of the squall alone could not have carried her from her berth. On the other hand, no witness for the defense, except the carpenter on the Thule, Winge, testifies that he saw the barks that morning until after they had both broken from their moorings. The witnesses for the defense do not, therefore, contradict the evidence for the libelant, to the effect that the Thule broke away first, and, colliding with the Marie, caused her to break from her moorings.

There is much conflict of evidence as to the moorings of the Thule. Several witnesses for the defense have testified that the Thule was securely moored. The condition in which the lines, by which the Thule was made fast to the wharf, were found after the squall, is stated by a board of survey appointed by the Norwegian consul, who reported, that the moorings consisted of one eight-inch hemp rope, made fast to a cross-tree two and one-half inches in diameter, and this was fastened between two stanchions on deck. These were both rotten. There were also two manilla ropes, both of which were in bad condition; and a four-inch hemp rope, badly worn. Jacob Bug, one of the board of survey, testifies that the Thule was moored to the wharf with one eight-inch hemp rope, which was fastened to the vessel in the manner described by the board of survey, that the cross-tree was rotten at one end, and both stanchions were rotten, that the two manilla ropes were worn and rotten, and that the hemp rope was half worn. None of the fastenings on the wharf gave way. One fact is clear and undisputed, that the moorings of the Thule were not sufficient to hold her fast to the wharf, in the squall of January 24, 1875. She broke away from her moorings, and, as the weight of testimony shows, collided with the Marie, to the serious damage of the latter. The defense claims that the damage was the result of the vis major, that the squall was sudden, unforeseen, and was unprecedented in severity, and, therefore, the collision was an inevitable accident, against which human foresight could not provide.

The collision being caused by the drifting of the Thule from her moorings, she must be liable for the damage resulting therefrom, unless she can show affirmatively that the drifting was the result of inevitable accident, or a vis major, which human foresight and precaution, and a proper display of nautical skill, could not have prevented. The Louisiana, 3 Wall. [70 U. S.] 164. Is this shown? The condition of the moorings of the Thule shows that she was not sufficiently secured against a storm of much less violence. She had only one good and sufficient rope, and that was fastened to a decayed cross-tree set in two rotten stanchions. Her other ropes were so worn and decayed that they could not hold. But the evidence shows that the Thule might have had warning of the coming storm. The night before the barometer indicated that a blow was imminent. The master of the Marie took warning, and although his bark was moored by two one-inch chains, procured two others of the same size, and used them to make his bark safe and fast. The master of the Thule, with the same warning, took no precautions to make more secure his moorings. He relied on what he had deemed sufficient for gales and rough weather, when his glass warned him that an extraordinary blow was coming. It seems to me, that even if it be conceded that the Thule was sufficiently secure against even strong gales' and squalls, yet, that when warned that a blow, which might be a gale, or might be a hurricane, was coming, common prudence would have dictated the strengthening of his moorings. This the Marie did, and, but for the fault of the Thule, would have weathered the squall in safety. The Thule neglected this most necessary precaution, and broke from her berth and caused the damage complained of. The vis major, or act of God, is a natural and inevitable necessity, and one arising wholly above the control of human agencies, and which occurs independent of human action or neglect: 2 Kent, Comm. 597. I do not think the testimony brings the defense within the terms of this definition. The collision might have been avoided by prudence and foresight. It was not an inevitable necessity.

The result of these views is, that the libelants are entitled to recover the damage sustained by the Marie from the collision. A consideration of the evidence satisfies me that the amount found by the district court is substantially correct, and I direct that a decree be entered for that sum, with interest from the date of the decree in the district court, and costs of suit in both courts.